Baird v. Boehner.

## BAIRD v. BOEHNER.

1. **Contract:** LEGAL AND ILLEGAL AGREEMENTS: DIVISIBILITY: AGREEMENT NOT TO PROSECUTE. Plaintiff, an unmarried woman, being pregnant by defendant, agreed in writing with him as follows: (1) To leave and stay away from their place of residence one year; (2) to waive civil claims against defendant; (3) to waive criminal claims against him; and, in consideration thereof, defendant agreed to pay her a certain sum monthly, and to convey to her certain real estate. In a subsequent civil action for the seduction, this contract was pleaded as a defense. *Held—*

(1) That the first element in plaintiff's agreement may have been lawful, *but not if the purpose of her absence was to defeat a criminal prosecution.*

(2) That the second element—the waiver of civil claims—was lawful.

(3) That the third element—the waiver of criminal claims—was an agreement not to prosecute defendant criminally, and was clearly unlawful.

(4) That the three elements of her agreement were so connected, as constituting together the consideration for defendant's promise, that they could not be separated, and that therefore the contract was void *in toto*, and constituted no defense to the action for seduction.

2. **Seduction**: VOLUNTARY SUBMISSION : INSTRUCTION. In an action for seduction, an instruction that if plaintiff voluntarily yielded to defendant's desires, she cannot recover, is not prejudicial to defendant, but rather favorable.

3. ———— : EXCESSIVE VERDICT : APPEAL. The trial court refused to set aside a verdict for sixty-seven hundred and fifty dollars for the seduction of an unmarried woman. *Held* that this court could not interfere, in the absence of any indications of passion or prejudice on the part of the jury.

4. ———— : EVIDENCE OF FORMER INTIMACIES. In an action for seduction, plaintiff was allowed to show that after she had submitted to defendant's desires she determined to reform, and to that end absented herself for some months, and that after her return defendant resumed his intimacy and she again yielded. *Held* that evidence of their relations before she went away was admissible as showing the extent of his control over her, and the manner · in which he acquired it.

5. ———— : EVIDENCE : TIME OF PREGNANCY. In such case it was certainly competent for plaintiff to show that she became pregnant, and, if so, to show when it occurred.

*Appeal from Mills District Court.*—HON. A. B. THORNELL, Judge.

FILED, MAY 22, 1889.

ACTION by an unmarried woman to recover for her own seduction, which was accomplished by declarations of love, and by promises of marriage, and acts which implied a promise of marriage. There was a judgment upon a verdict for plaintiff. Defendant appeals. The case has before been in this court. See 72 Iowa, 318.

*Watkins & Williams*, for appellant.

*John Y. Stone*, for appellee.

BECK, J.—I. The objections to the judgment will be considered in the order of their discussion by defendant's counsel. The evidence upon the last trial differed from the evidence on the first, as to the means used by defendant to accomplish plaintiff's seduction. It was shown at the last trial that she was induced to submit

to defendant's desires by promises of marriage and pro-
fessions of love made by him. The point upon which
the case was decided upon the former appeal is not now
in it.

II.   A count of the answer pleads as a defense that
the cause of action was fully settled by a written agree-
ment which the parties executed, in the
following language: "It is agreed by the
parties signing this contract as follows:
The party first signing agrees to leave
Malvern immediately, and further agrees to
waive all claims, both criminal and civil, against party
signing this contract second.  And first party further
agrees to stay away from Malvern one year from date of
signing.   The party signing this contract second agrees
to pay to party of the first part forty dollars per month,
commencing May 15, 1884, and to continue until the
party signing this contract second shall dispose of the
offspring, which is liable to occur, providing said birth
shall happen within five months after signing this con-
tract, and it is understood that party signing the con-
tract second shall have eight months after the birth to
dispose of the child; and second party agrees to deed
to first party a certain double house situated on Third
avenue, in Malvern, in the south part of town, which is
the property of second party.

"Malvern, April 24, 1884.

"MAY L. BAIRD,
"L. W. BOEHNER."

As applicable to this defense, the defendant asked
the court to give to the jury the following instructions,
which were refused: "(3) If in the alleged contract for
a lawful consideration plaintiff undertook to do several
things, some of which were lawful and some of which
were illegal, and if the lawful things can be separated
from the illegal ones,—that is, if she could perform the
lawful ones without thereby doing any part of the
illegal ones,—then the contract is valid, unless it was
obtained by fraud.   (4) Unless you find that the con-
sideration which the defendant was to give plaintiff by

1. CONTRACT:
legal and
illegal agree-
ments: di-
visibility:
agreement
not to prose-
cute.

the terms of said contract was unlawful, and that the acts which plaintiff was to perform under said contract were capable of being separated, and some were lawful and some were not, then, as to such acts as she could lawfully perform, the contract is valid." "(11) As the evidence shows without any conflict that the only subject discussed between the defendant and Henry Baird, at the time the contract admitted to have been executed between these parties was executed, was the subject of the act at Plattsmouth, which evidence was produced by plaintiff, you cannot find that the purpose of the parties was to compound an offense, and the contract is an absolute defense to this action, and you must find for the defendant. (12) The admitted contract is not upon its face illegal, and, as the evidence shows without any conflict that the only subject discussed at the time it was executed was the act at Plattsmouth, which was not a crime, and as its terms cover the claims set up in this action, you must find for the defendant."

These instructions were refused, and the following were given: "(21) If the evidence fails to show that the agreement in question was obtained from plaintiff through fraud, you should then consider whether said contract is illegal. A contract that injuriously affects or subverts the public interests, or if by its terms, or contemplated manner of performance, it is intended to prevent or impede the due course of public justice, it is to be deemed invalid. It is the duty of every citizen to refrain from voluntarily placing himself in a position in which it is to his pecuniary interest to suppress, stifle or impede a public prosecution of crime. Hence all agreements not to institute criminal proceedings, and all agreements in any way to prevent or stifle such prosecutions, are immoral and illegal. (22) If, after considering all of the facts and circumstances shown by the evidence to have been contemplated by the parties at the time of making the agreement in question, you believe that the real purpose of the parties in making said contract was to provide thereby that plaintiff should not prosecute defendant criminally for the alleged

act of seduction, and to provide means for secreting plaintiff, so that she could not be found and used as a witness against defendant by the state in a criminal prosecution for said act, then the contract is void, and constitutes no defense to this action. (23) But if you believe from the evidence that the 'criminal claims' referred to in the agreement had reference to bastardy proceedings for the support of the child, referred to in the agreement, and that it was not the purpose of said agreement to prevent plaintiff from prosecuting defendant criminally for the alleged act of seduction, or to hire her not to so prosecute defendant, nor to place her beyond the reach of the state, so that she could not be used as a witness against defendant in a criminal prosecution, then said contract would not be illegal, and it would be a complete bar to plaintiff's recovery in the case, unless you find from the evidence that said contract was obtained through fraud, as before explained." These rulings upon instructions counsel insist are erroneous. We will proceed to consider them.

The contract, it will be observed, obligates plaintiff to do three things, namely: (1) To leave and stay away from Malvern one year; (2) to waive civil claims against defendant; (3) to waive all claims criminal against defendant.

The first thing to be done by plaintiff may have been lawful, if there was no purpose thereby to defeat or evade the law. We may assume that it is lawful, though, indeed, it appears that the purpose of securing plaintiff's absence was to defeat a criminal prosecution. The second thing— the waiving of civil claims —may lawfully be done. The third—the waiving of "criminal claims," which evidently means an agreement not to prosecute defendant criminally—is evidently in conflict with the law. No agreement not to prosecute another for a crime will be recognized and enforced by the law. This rule is founded upon the strongest demands of public policy. The criminal laws of the state would rarely be enforced were it left to the defendant and those authorized to institute prosecutions for crimes to arrange by

contract, based upon consideration, so that the offender would not be prosecuted in the courts. *Haines v. Lewis,* 54 Iowa, 301.

III. But it is contended by defendant that, as the contract provides for doing acts which are legal as well as the illegal act, it may be enforced as to the legal acts. Counsel regard the contract as to the obligations of plaintiff as divisible, and insist that it may be enforced as to the obligation which is legal. This is correct, with this exception : If the acts, legal and illegal, are so connected that they cannot be separated, the whole promise is void. *Casady v. Woodbury County,* 13 Iowa, 113. Now, plaintiff's obligation— her promises to do and not to do the prescribed acts— are connected as constituting together the consideration of defendant's promise to pay money and conveyed land. Her promise to do the illegal acts is so bound with her agreement to do the legal act, by the fact that they both constitute a consideration, that they cannot be separated. If plaintiff should attempt to enforce the contract after she had violated it by prosecuting defendant, she could not insist that the contract is divisible, and that she should recover to the extent to which her other promises constituted a part of the consideration. It will not be claimed that she could recover. It could not be determined just what sum defendant ought to recover against plaintiff's claim to recover for his breach of the contract. Indeed, it would appear that the agreement protecting defendant from criminal prosecution constituted the main weight of the consideration upon which he agreed to pay plaintiff money and convey to her land. These views lead us to the conclusion that the rulings of the court below upon the instructions above set out are correct.

IV. The eleventh and twelfth instructions asked and refused we think do not correctly state the facts upon which they are based. It does not follow that the only act discussed when the contract was executed, if lawful, would make valid the contract obligating the parties to

*Margin note: THE SAME.*

do an unlawful thing. Nor does the evidence show that the "act at Plattsmouth" was not a crime.

V. Certain instructions, given, hold that, if plaintiff voluntarily yielded to defendant's desires, she cannot

2. SEDUCTION: voluntary submission: instruction.

recover. Counsel for defendant complain of this rule. We think it is favorable to defendant, and, if erroneous at all, the error is to his advantage. If plaintiff's will had been overcome by defendant's importunity, flattery, professions of love and the like, so that she voluntarily submitted, it would hardly be claimed that she could not recover. Counsel think the rule should have been stated in this language: "If he accomplished his purpose by any importunity, without deception, plaintiff cannot recover." But this statement implies the thought that her will was overcome by importunities. It scarcely differs from the thought of the instruction.

VI. It is strenuously urged that the court below erred in refusing to set aside the verdict, which was for

3. ——: excessive verdict, appeal.

sixty-seven hundred and fifty dollars, on the ground that it is excessive. It is not to be denied that it is large, but we are unable to say that it is beyond the limit demanded by justice, and indicates, by its excess, passion and prejudice on the part of the jury. It was the province of the jury to assess the damage. We are unable to say that any smaller sum would be nearer the actual compensation which should be awarded to plaintiff.

VII. After plaintiff had often submitted to defendant's desires, she determined, as she testifies, to break off her relations with him, and reform. To

4. ——: evidence of former intimacies.

accomplish this end, she went to Kansas, and remained for eight months. After her return defendant resumed his intimacy with her, and she again submitted to his desires. Defendant objected to evidence showing the relations of the parties and other matters connected with them before she went to Kansas. We think it was rightly admitted. It disclosed the relations between the parties, the extent of

the control which defendant had acquired over plaintiff, and the manner in which he acquired it,—matters proper to be considered in determining plaintiff's right to recover.

VIII. Plaintiff was permitted to give evidence as to the time when she became pregnant. It is insisted that it was not competent. We think that it tends to disclose the relations of the parties and the results of the alleged seduction. It was surely competent to show that plaintiff did become pregnant. If so, it is proper to show when it occurred. The foregoing discussion disposes of the questions of the case, so far as they are discussed by counsel. The judgment of the district court is

5. ——:
evidence:
time of
pregnancy.

AFFIRMED.